and others v. Harvest Natural Resources Incorporated. Good afternoon, your honors. May it please the court, Bruce Wagner for appellants Kensho Sone et al. This case centers on whether the seeking damages and injunctive relief from Harvest for its exploration activities in the South China Sea. The political question doctrine excludes from judicial review controversies which revolve around policy choices by Congress or the executive branch, but courts have rejected the political question doctrine in cases requiring treaty, statutory, or constitutional. Isn't the bigger problem that your clients don't have standing? I mean, they don't own this. They don't even claim to own this area we're in controversy. I believe they do, your honor. They claim that Taiwan owns it. No, they claim as of residents of Taiwan when they don't claim to be property owners of a deed. They don't claim to be owners. They're saying people of Japanese That is exactly correct, your honor, based on that. And that leads us to the San Francisco Priest Treaty, which was signed on September 8, 1951, by Japan, by which it renounced all right to foremost and the best of ours. Could you focus on that for a minute? I'm not sure I understand how that the Taiwan Relations Act alters the standing analysis. Well, the Taiwan Relations Act gives Taiwan and the people of Taiwan the right to sue in U.S. courts. We have argued in the lower court that the appellants have alleged in their complaint injury in fact that they reside in Taiwan, that the WAB 21 area of exploration is partially in the economic zone of the Sinan Islands, whose natural and economic resources belong to the people of Taiwan and harvest without their consent conduct exploration in that area. I would point out to the court as what struck me is missing in that is it does not create any individualized right as such. I mean, admittedly, I understand your argument with respect to the Taiwanese people, the citizens, whatever. But it does not, in terms of Article III standing, speak to the individualized right. I'm a citizen of the United States, and I have a lot of protections from that. But it doesn't give me standing to enforce rights that are shared by all other citizens who are commonly situated. Well, we are not Well, how are they distinguished from any other person who The appellants are or were residents of Taiwan when Japan had sovereignty over Taiwan until the end of World War II, or their descendants. And that's the distinction I should also point out. And how many people in Taiwan meet that description? Your Honor, I just don't know. It's well more than your clients. I assume so. But the United Nations Economic and Social Council reaffirmed the right of people of occupied territories for natural resources. And again, getting back to the San Francisco Peace Treaty, the San Francisco Peace Treaty identifies the United States as the principal occupying power. And if the U.S. is the principal occupying power of Taiwan, then appellants, since they resided in Taiwan at the time of Japanese sovereignty, they have certain rights under the umbrella of the United States. We believe it is not necessary for the court to decide whether Taiwan is a nation capable of having such a claim or decide who owns the Sinan Islands and the South China Sea for the lower court to hold harbors liable for trespass. What is necessary is for the court to interpret the San Francisco Peace Treaty, which states that the U.S. is the principal occupying power of Taiwan, and what rights flow to appellants pursuant to that. And the Bodomen case is instructive. The Bodomen, the government, asserted the political question doctrine and Are all other Taiwanese citizens who are either themselves or descendants of people who were there when Japan left necessary parties to this case? Because they all have the exact same interest as your clients, and this ruling, if we decided it on its merits, would arguably bind them. The court may be right on that. Okay, so that's thousands of people. If you join and search out all those people, but if the lower court had indicated that you needed some kind of a class action or some kind of action representing the rest of the people, then we would have attempted to do so. But that wasn't the case. What the case was that as soon as we filed the lawsuit, soon thereafter the motion to dismiss was filed, and then the lower court, district court, took many months, a better part of a year, to finally decide on the motion to dismiss once I filed a motion for leave to conduct discovery to find out to whom Harvest signed its contract and the basis of their $2,900,000 book evaluation. The court just said, okay, I've got your motion for leave to conduct discovery. I'm denying that. And the court also said, and I'm denying your motion to dismiss based on the political question doctrine without even considering the San Francisco Peace Treaty and what it says as the U.S.'s principal occupying power. I don't understand what difference it makes vis-a-vis whether your clients have standing about this San Francisco Treaty. I'm just having trouble. I understand your political question argument. I just am having trouble because it seems like thousands and thousands of people in Taiwan are descendants of these people that were there then. Just like in America, people immigrate here, but also a lot of people here can trace their family back to some other event that happened 20, 30, 40, 50, 60 years ago. And so you have half the country who can do that and half the country who got here later. I don't understand how that gives your client any kind of unique standing or any kind of standing whatsoever to claim trespass, which has to do with ownership rights. These are really the ownership rights of Taiwan, if anyone, not your particular client. Your client isn't saying, look, I had a deed to a house, and you came in and took it by force. You, the U.S., came and occupied my street and took my house, and you took Judge Dennis' house next door and Judge Higginbotham's house down the street. That would be a claim of trespass. Right. These clients are claiming only that as citizens of Taiwan who have this lineage qualification, they own this on behalf of Taiwan. Well, that is correct, Your Honor, but that's why we're focusing also on the San Francisco Peace Treaty, which says the U.S. is principal occupying power. If the U.S. is principal occupying power on the San Francisco Peace Treaty, then certainly the residents of Taiwan at the time of relinquishment of sovereignty by Japan are considered people of occupied territories. And again, the United Nations— And what right, then, does that give them to go sue about the South China Sea, even if that's true? Well, as I have indicated, the United Nations Economic and Social Council reaffirmed the to their natural resources, and on that basis, they claim that right. I believe that Harvest also contend that the proper party here was China, but we assert that Harvester's was the right defendant once it wired Preston, the party that contracted with China's National Offshore Oil Corporation. Appellant's claim is with Harvest and it's asinine of the contractor, not with China. And Harvest also contends that the Act of State doctrine does not apply—excuse me, we assert that the Act of State doctrine does not apply because appellants do not seek a court order declaring invalid the official act of a foreign sovereign. That's not what we have here. What we have here is a request of the court to interpret the San Francisco Peace Treaty as it pertains to appellants, and also for the court to consider the Boumediene case, which an argument can be made that the political question doctrine was abrogated by the decision in Boumediene, where the court found de facto sovereignty by the United States, and therefore accorded prisoners in Guantanamo the right to have his corpse under the U.S. Constitution. If there are no further questions, I will reserve the rest of my time for rebuttal. Thank you, sir. Thank you. Mr. Dekovich. Thank you, Your Honors. Good afternoon. May it please the Court. My name is Matt Dekovich. I represent Harvest Natural Resources. Numerous flaws in the plaintiff's complaint justified, required, indeed, the district court to dismiss this case under Rule 12, and these same flaws warrant your affirmance. Of course, our briefs cover all the flaws, but I'd like to focus in my time on a few in particular. They are lack of standing for two grounds, two independent grounds. The plaintiff's grievance, or their complaint is at most the very kind of generalized grievance that the U.S. Supreme Court has said is not sufficient to confer standing. And furthermore, they have not alleged an injury to a legally protected interest in the South China Sea. I'd also like to focus on the political question doctrine. There are two political questions in this case. They deal with the sovereignty status of Taiwan and who is the sovereign of Taiwan. Do you think that the standing is so obviously lacking as to make this appeal sanctionable? Well, I have to say that yes, we do. We've regarded this suit for a long while as very harassing. You know, we briefed it in district court, and here we are. And we truly did weigh whether to move for sanctions. But to me, the answers are obvious, and there are many. The flaws are obvious, and there are many. You've got lack of standing. You've got 141 million dollars for an alleged trespass in the South China Sea. And the injury they're asserting is not any personal injury to themselves, but to the maritime, the alleged maritime territorial rights of Taiwan, of an entire people. But they're not any different than the millions of others who are not present here who would also fit their definition of Taiwan needs. And then you have also the political question. As I said, there's multiple political questions here. There's a question of who owns this disputed territory in the South China Sea, and there's also the question of Taiwan's sovereign status. And then finally, the third flaw is they've simply failed to state a claim upon which relief can be granted, for a couple of reasons there, but primarily because there's no law, none whatsoever, that supports their claim that individuals have a right to exclusive possession of the When, you know, we've cited the law of Texas. It's the law everywhere, to my knowledge, that the law, you know, a claim of trespass protects the right to exclusive possession, the right to exclude others from property. And so they're necessarily suggesting that these plaintiffs have an individual possessory interest in the sea, and there's just no law to support that. So going back to standing, this is exactly the kind of case that the Supreme Court has said is a generalized grievance that is inappropriate for courts to consider. It's a jurisdictional issue. You have the Richardson case. You have the Schlesinger case. The Schlesinger case is actually, I think, a class action on behalf of all American citizens. A class action won't add anything. If it's a generalized grievance, it's just because you put everybody in the class, it doesn't solve the problem. Everybody in the class has the same, identical interest in this warning. Except that it's still the same kind of generalized grievance. That's what I'm saying. A class action doesn't solve the problem. He agrees with you.  It's a friendly question. Thank you, Your Honor. It's a friendly question.  There's simply no legally protected interest that any individual has in the right of the sea. They've never cited any law that suggests it. There's no legally protected interest that these plaintiffs can assert. Correct. A sovereign interest that can claim it there. Exactly, Your Honor. You're saying no individual person anywhere has a particular individual right to the sea. Correct. And that's very true. The one thing they've cited is the UN Convention on the Rights of Coastal States. Coastal states have certain sovereignty rights over adjacent waters and waters surrounding their territories. And you read through that, nothing in there would suggest that there's an individual right to the sea. It's not property, it's not realty that you can divide up and deed out. And so individuals simply don't have a legally protected interest in the sea. And therefore, there's no injury here. There's simply no injury here, so you don't have standing. Firing rockets over the South Sea is a trespass? Yes. It's not a trespass where a private litigant would sue in court. It's a matter between nation states. Nation states are the ones that have sovereignty over the sea. So, one thing they've argued is this Taiwan Relations Act somehow gives them standing. We've heard that argument over and over in the district court. We've heard it again on appeal. We've answered it each time. There is nothing, nothing in the Taiwan Relations Act that speaks to standing. See, the Taiwan Relations Act was passed in 1979, right around the time shortly after President Carter officially recognized the People's Republic of China as the sole government of China and ended official diplomatic relations with Taiwan. And so what that act was doing was it was addressing the fact that the United States in this new world where Taiwan was no longer recognized still wanted to have a relationship, unofficial, non-diplomatic, or non-governmental relationship, but continued, the act says continued cultural, commercial relationships between the people in the United States, the United States and the people in Taiwan. So, it addressed a number of things about the relationship going forward. And the one thing it said was even though the United States no longer recognizes Taiwan officially, diplomatically, Taiwan and its people would still have the same legal capacity. Legal capacity is a very different concept from standing. Legal capacity refers to one's legal qualification to sue in courts. It doesn't... Somebody in this room has the same legal capacity to sue as the people of Taiwan, but we can't sue about the South China Sea and your cooperation there. Right. That's exactly right, Your Honor. You still have to have a claim to sue. Just because you have capacity to sue, you know, somebody who's 16 years old may not have legal capacity to bring a suit. Somebody who's 19 would have capacity to bring a suit. That just talks to whether they can bring a suit, but it doesn't say do you have a claim, do you have standing to bring a claim. So, that's a completely different concept, and it's not addressed at all in the Taiwan Relations Act. And I would also point out that even if Congress had wanted to, you know, give some automatic free pass of standing to some group of individuals, regardless of what the claim might be, they would always have standing. They couldn't do that because standing is constitutional. There's an irreducible minimum requirement for standing injury, in fact, in some of the other things we've addressed in our brief. And so, even had Congress wanted to do that, it couldn't. So, the Taiwan Relations Act does not alter the standing analysis. In fact, it's completely irrelevant to standing. I'd like to address the political question doctrine. I think this case is remarkably similar to this court's precedent in the Occidental case, 1978 decision from this court. That case dealt with two private litigants. It was a dispute over oil. The claim was regarding conversion of oil because the other, the defendant, had produced the oil from offshore territory in the Persian Gulf, and the plaintiff said, wait a minute, I had a concession from a party that gave me a right to that. And meanwhile, the defendant believed it had the right to do it, because the defendant also had a concession. To resolve the claim, it had to decide who had rightful ownership of the oil. And to determine that question, the court had to decide whether it was Iran or Sharjah who actually had sovereignty over the island and near where it was produced, and therefore, who had sovereignty over the island. And so the question was not, as the court said, was unavoidable. It was going to have to decide, did Iran or did Sharjah own this territory? Did they have sovereignty over this part of the sea? And meanwhile, the executive branch had said that the U.S. is neutral. We're not taking sides in that dispute. And so the court there said, look, we also have to decline to adjudicate the suit. We've got to dismiss the suit, because when the executive has said, we're neutral, then the courts don't have a role to step in and take sides themselves. Well, I mean, here the executives actually said something different than neutral. They said, we don't recognize Taiwan as a country. We recognize the People's Republic of China. It's a very sensitive political situation over there. I'm not unaware of that. But we don't actually have neutrality here, do we? We actually have kind of the opposite. Well, there's actually two political questions. One has to do with this disputed area in the South China Sea. The part that they're saying that there was a trespass that occurred into, that is actually a subject of a multilateral dispute involving not only Taiwan claims that Taiwan is not a country, it can't have a claim. Correct. So there could be 10 other countries that do, and maybe there's neutrality on that. But the United States has taken a position, despite wanting to maintain some relationship with Taiwan. And I think there being a lot of people in the United States who feel a great deal of compassion and concern about the circumstances of Taiwan. But as far as the official executive position, you just finished saying there was a recognition of the People's Republic of China, who in turn does not recognize Taiwan as a separate country. And that's all true. And that goes to that second political question we're talking about, which is to even have a claim to this area of the South China Sea that's superior to and competition with China, because China also claims it, then it would depend on an implicit, necessary to that finding, that Taiwan also has a claim, would be a finding that they're politically independent from China. Because if they're not politically independent from China, then China's the country that has the claim, and certainly they, you know, Taiwan cannot trump China's claim to it if they're part of China. Well, you hear earlier, we had a case on a different part of the world. So, you know, they're necessarily asking for a finding of Taiwanese independence, and you're quite right, Your Honor. The government has said we do not support Taiwan independence. We've cited in our briefs the whole diplomatic history going back to President Nixon's administration, where from that point forward, the United States told China, look, we understand your position that Taiwan is a part of China, and we do not challenge it. And there was this Lin case in the D.C. Circuit where the plaintiffs brought suit asking for a determination that the United States actually had sovereignty over Taiwan, much as we heard from the appellants here. And the D.C. Circuit said that's a political question, because the United States has said, you know, that there's this one China policy, we don't challenge China's position that Taiwan is a part of it, and doesn't support Taiwan independence. And we're not going to get in the middle of that. That's for the President to say, we cannot resolve this case any different. We have to defer to the executive on that point. It's a political question. But that's, and I'd like to speak to the point that's quite interesting here. They kind of sidestepped this whole Taiwan-China issue. They have said that actually the United States is sovereign over Taiwan. And... I'm sure that was news to the United States. Yeah, exactly. And to China. Exactly. Forty years of diplomatic history, the United States withdraws its military troops, as you can see in the 1979 communique, withdraws its remaining military presence. Forty years of diplomatic history, the United States telling China that we don't challenge your position, we're not going to interfere with your sovereignty on this issue. Our only concern is that peace prevails. And yet all along, somehow the United States has been the sovereign occupying power over Taiwan. That's what they suggest. The D.C. Circuit said, first of all, we can't even address the question about whether the United States has legal sovereignty over Taiwan, because that's a political question. And all of this diplomatic history shows the U.S. is certainly, the president, the executive branch, is certainly not asserting any kind of legal sovereignty over Taiwan. But then it said, well, I think their argument is on de facto sovereignty, which is regardless of the legalities, who has the right to do so. The Supreme Court said, you know, we have to deal with Guantanamo Bay, and it was important to the, it was a habeas case, and it was important to the decision for the court to know, did the U.S. actually occupy the Guantanamo Naval Base? And it was uncontested, as the court said, it was obvious and uncontested that the answer to that was yes. Here they, so they want to take that, the fact that the court sort of made that observation, and they want to say that a court here is empowered under Boumediene to make the same observation that the U.S. occupies and controls Taiwan. That's just, that's just not credible. It's just, there's, it's just not the real world here. Taiwan has its own governing authorities. The Lin case, the court commented in the Lin case that nobody could ever even assert that the U.S. controls the people in Taiwan. Nobody could even assert that. And so, again, the questions of legal sovereignty, that's a political question. De facto sovereignty, you know, I'd say that's still a political question under Boumediene when it's not obvious and uncontested, but there's just, there's nothing here that... Well, and even the finding with Guantanamo doesn't extend to the entirety of Cuba. It never is actually a military installation. So if you have a military installation in the middle of some other country, I guess it's debatable, but it doesn't make you in charge of the entire country. Correct. And we don't, the U.S. doesn't even have a military installation in Taiwan, or it's certainly never been argued that it does. Taiwan has its own governing authorities, as recognized by the T-Taiwan Relations Act. Now, the, they've mentioned that this case only requires treaty interpretation with reference to the San Francisco Peace Treaty. Nothing in the San Francisco Peace Treaty addresses the issues here, you know, before the court in this case, nothing. The San Francisco Peace Treaty ended the state of war between the treaty members and Japan at the end of World War II. As part of it, Japan relinquished sovereignty over a number of territories, including, I guess, some of these areas in the South China Sea, including Taiwan. But the San Francisco Peace Treaty is a political question. It's a political question as to who would go forward, who would succeed to ownership, and that is a political question. I would suggest as well it's a political question, what is the proper definition of the Taiwanese people? They have their own definition. Congress has decided in the Taiwan Relations Act that Taiwanese people encompasses anyone on Taiwan. That's the definition in there, including the governing authorities on Taiwan, raising the issue of whether, you know, the governing authorities on Taiwan, the Republic of China government is a legitimate representative of the people. Who would be the one, you know, and if so, they would of course have any sovereignty rights they may have to sea territory. That's a political question. Is the Republic of China government the sole, is the representative of the people? And so this case is just rife with political questions. And starting, the thing that can never avoid is that they need a determination that Taiwan, not China, not Philippines, not Vietnam, not Malay, or Malaysia, or not Brunei, actually own this disputed territory, these islands and reefs and islets in the South China Sea that everybody's fighting over. Because they're all fighting for sovereignty over those claiming they have sovereignty because they want the surrounding maritime rights. And that's a question that was cited in our briefs. The Secretary of State has said over and over, the U.S. is neutral as to sovereignty disputes in the South China Sea. The U.S. takes no positions on ultimate sovereignty. The U.S. has an interest in that, in a peaceful resolution, the U.S. certainly has an interest in open seas, but the executive has said, could not be more clear that the U.S. does not take sides in these disputes on the merits. And that's exactly what they called upon the district court to do, is to take sides and decide that Taiwan owns this portion of the South China Sea and not China and not anyone else. The court doesn't have jurisdiction to do it. They don't have standing. And they also didn't state a claim, even if they could get past these jurisdictional arguments. They've cited nothing that gives an individual a possessory interest in the sea. And of course, a claim of trespass is a claim to vindicate your right to exclusive possession. And so for all of the numerous grounds that we've covered in our brief, we urge the court to affirm the district court's dismissal of this case. Mr. Wagner. Your Honor, counsel just said that the U.S. takes an essentially neutral position as to sovereignty in the South China Sea. Recent events have shown otherwise, where the U.S. government has said that China's building of artificial reefs in the South China Sea does not support China's claim of sovereignty whatsoever. I asked your opponent whether this case is so lacking in merit on the standing question that it should be sanctioned, and he responded. So I would want to give you an opportunity to respond. Your Honor, I think a good-faith argument can be made as to standing based on the San Francisco Peace Treaty and the U.S. named as the principal occupying power and the United Nations Economic and Social Council, which has reaffirmed the right of people of occupied territories to their natural resources. Our contention that the United States, as the principal occupying power of Taiwan pursuant to the San Francisco Peace Treaty, is the right of the residents, especially the appellants who are residents. It's a strange occupation. There's no U.S. presence pretty much at all to call that an occupation. I mean, my dad lived under the Nazi occupation of Holland. It wasn't mysterious to them. They had armed people around the country telling them what to do. That's an occupation. I don't see that in Taiwan. Well, Your Honor, all I know is that's what the San Francisco Peace Treaty said, and that's why we're asking the court and the district court to determine whether to interpret the San Francisco Peace Treaty and its provision as to the United States being the principal occupying power. Again, even though Taiwan has its own government, the U.S. treaty is enforced, published by the United States 2013, states that the United States does not recognize the Republic of China as a government or state. As to the issue of sanctions, I think my clients have acted reasonably. The court, the district court— It's not really your clients I'm questioning the reasonableness of. It would be you, because you're the one who has—I'm sure your clients aren't experts in the question of standing and probably very passionately believe in their case. I'm sure that's true. You're the lawyer, and you're the one who has to instruct them what the law reasonably allows, and I'm just questioning that. Well, Your Honor, I— That's just me speaking. I'm not— Well, that's fine. I honestly believe that a defaulted argument can be made as to standing based on the appellant's status as residents of Taiwan or being their descendants as of the time of Japanese sovereignty over Taiwan. And again, as to asserting that they've been damaged in that, again, the United Nations Economic and Social Council has reaffirmed the right of people to occupy territories to their natural resources, and we believe that the argument—or a good-faith argument made that the people, the appellants in this case, are—have a claim to damages. We're not saying sovereignty or anything else. We're just saying that their occupied territories and the right of the people to those natural resources is undisputed as to the United Nations Economic and Social Council. It's clear that this is not a case where the appellants have a deed to property and third-party trespasses on it. This is different. But this is exploration for natural resources pursuant to contract issued by China to First Crestone, and it was assigned to harvest. And we reasonably believe, and I reasonably believe, that there has been a trespass—at least a good-faith argument can be made and claimed by the appellants. And if necessary, you know, again, the Court brought up the class action. If that needed to be done, we would seriously consider it. No, that was a way—I didn't mean you should have a class action as a way of illustrating that I think this is a generalized grievance, as Judge Higginbotham said. A class action doesn't solve the fact that you bring it on behalf of the entire of America. That doesn't change that it's a generalized grievance. Well, I respectfully disagree that it's a of Taiwan when Japan had sovereignty over their descendants. It's only generalized as to other members of that class, but not to the whole population of Taiwan. But it's a very large number of people that follow. Your Honor, I'm not sure how large. On that basis, I would submit. Thank you so much. Thank you, sir. Thank you.